UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENE CHALOM,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No. 2:18-cv-12632 |

**OPINION**

Before the Court is Defendant United Airlines, Inc.'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 42. For the reasons below, United's motion will be granted.

I

A

Plaintiff Rene Chalom was a member of United's MileagePlus ("MP") Program. ECF No. 1 at 11. Under the MP Program, travelers can accrue "miles," including from booking travel with United or transacting with a United partner, ECF No. 43 at 74, and can redeem those miles to pay for future United flights, ECF No. 43 at 77-78. Chalom accrued over one million miles in his MP account, including through travel on United flights, as compensation for lost baggage on a United flight, and from transactions with United partners such as Hertz. Chalom Dep. 110:8-13, 112:25-123:10, ECF No. 42-2; ECF No. 1 at 11. On March 2, 2018, United notified Chalom that it terminated Chalom's

1

MP account and cancelled his accrued miles.  See ECF No. 42-3 at 9-10 ¶¶ 17-18.

United informed him:

> [Y]ou have violated the Contract of Carriage,[1] by making multiple reservations for the same day and/or flights . . . . As a result, [under MP Rule 2,[2]] we permanently closed your account, cancelled all accrued mileage, [and] cancelled any outstanding award tickets issued using mileage as form of payment.

ECF No. 43 at 133-34.  MP Rule 2 allows United to terminate a member's participation in the MP Program and cancel accrued mileage when it finds "[a]ny abuse of the [MP] Program or failure to follow the . . . Contract of Carriage."  ECF No. 43 at 69.  United asserts that Chalom engaged in such abuse, noting "67 flight segment [bookings] with numerous instances of duplicative/illogical reservations," ECF No. 42-3 at 3 ¶ 7.  These

---

[1] The Contract of Carriage provides, in relevant part:

> [United] reserves the right to cancel bookings and/or reservations which it deems fraudulent, abusive, illogical, fictitious, which are booked and/or reserved with no intention of flying . . . .  The types of improper reservations that [United] will cancel without notice include, but are not limited to: . . . reservations made for the same passenger on flights traveling on or about the same date between one or more of the same nearby origin or destination cities; and reservations with connections that depart before the arrival on the inbound flight.

ECF No. 43 at 93.

[2] MP Rule 2 provides, in relevant part:

> Any abuse of the Program or failure to follow the Rules, United's Contract of Carriage, United's fare rules, Partner rules, terms and conditions . . . may result in United exercising any one or more of the following remedies . . . (a) the termination by United of such Member's membership . . . (b) the removal or cancellation by United of any or all accrued mileage . . . (c) the confiscation of any award tickets . . . .

ECF No. 43 at 69-70.

2

bookings included instances where flight reservations overlapped, such that a passenger could not have physically taken each flight. See, e.g., ECF No. 43 at 133 (listing three duplicative bookings for flights from Los Angeles to Las Vegas, three duplicative bookings for flights from Newark to Los Angeles, and three duplicative bookings for flights from San Francisco to Las Vegas, all on March 14, 2018); ECF No. 43 at 64 (listing six overlapping bookings for flights from Las Vegas to Newark departing on March 17, 2018, seven overlapping bookings for flights from Denver to Spokane departing three days later, and seven overlapping bookings for flights from Newark to Denver departing the same day as the flights from Denver).[3]

---

[3] In his opposition brief, Chalom argues that United committed spoliation by not preserving access to his MP account and, as a result, should be sanctioned and precluded from obtaining summary judgment. ECF No. 45 at 20-21. Chalom's argument fails for two reasons.

First, Chalom never completed his request for discovery sanctions before the Magistrate Judge. He argued to the Magistrate Judge that United should have produced records that would replicate the information he could access in his account regarding "the time and date that [each] reservation was made; the name of the passenger for whom it was made; a mechanism of payment, whether it would be for points or money; when the booking would expire; whether or not the trip would involve a nonstop or a direct stop; whether it would have been coach or business class or first class." ECF No. 16 at 12-13. United responded that: (1) it does not retain individual reservation documents, ECF No. 16 at 13, (2) Chalom already had "over a thousand pages of emails," ECF No. 16 at 14, and (3) it "provided [Chalom] with his account data," ECF No. 16 at 15. The Magistrate Judge denied Chalom's informal motion to compel United to "provide access to its reservation booking program" without prejudice, ECF No. 14, and instructed Chalom to "[b]uild a record" and return with a "more complete record." ECF No. 16 at 18. Chalom neither returned to the Magistrate Judge with such a record nor appealed the Magistrate Judge's ruling. Moreover, he did not raise any spoliation concerns in joint status letters regarding discovery, ECF Nos. 27, 38.

Second, Chalom adduced no evidence showing that the documents United provided were incomplete. United states that it produced 353 Bates-stamped pages of retained data from Chalom's MP account, which included information such as "Booking

B

Chalom filed a complaint in the New Jersey Superior Court, alleging that United improperly revoked his MP account and cancelled his miles. ECF No. 1 at 10-19. He brings claims for: (1) breach of the duty of loyalty; (2) breach of the duties of candor, loyalty, and good faith; (3) unjust enrichment; (4) quantum meruit; (5) violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2; and (6) breach of contract. ECF No. 1 at 13-17. United removed his complaint to this Court based on diversity jurisdiction. ECF No. 1.

After the parties completed discovery, United filed a motion for summary judgment, arguing that Chalom's claims are preempted by federal law and, to the extent they are not preempted, fail as a matter of law. ECF No. 42. Chalom opposes the motion. ECF No. 45. This matter was assigned to the undersigned for the limited purpose of addressing the motion for summary judgment. ECF No. 54.

II[4]

A

The preemption doctrine stems from the Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in

---

Key Elements; Booking Details; Frequent Flier Withdrawal Activity; Frequent Flier Deposit Activity; Frequent Flier Non-Flight Activity; . . . Reservation Details; and Ticketing." ECF No. 47 at 14-15 n.8.
 Thus, Chalom is not entitled to relief based on alleged spoliation.
[4] On a motion for summary judgment, the Court views the facts and makes all inferences in the non-movant's favor. Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "Congress . . . has the power to preempt state law." In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 83 (3d Cir. 2017) (citing Arizona v. United States, 567 U.S. 387 (2012)), cert denied sub nom., Alban v. Nippon Yusen Kabushiki Kaisha, 138 S. Ct. 114 (2017). One type of preemption is express preemption, which requires an analysis of whether "[s]tate action may be foreclosed by express language in a congressional enactment." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001).

In 1978, following a long period of heightened regulation, Congress enacted the Airline Deregulation Act ("ADA"), 49 U.S.C. §§ 40101-130, which sought to deregulate the air-travel industry to "maxim[ize] reliance on competitive market forces." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992) (citation omitted). To ensure that state law did not frustrate this objective, id. at 378, Congress included a preemption provision, which provides:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . .

49 U.S.C. § 41713(b).[5] The Supreme Court has broadly interpreted the words "relating to," holding that "[s]tate enforcement actions having a connection with[,] or reference

---

Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[5] The original statute, § 1305(a), was amended in 1994. The Supreme Court noted that with this revision, Congress "intended . . . to make no substantive change." Wolens, 513 U.S. at 223 n.1 (citing Pub. L. 103-272, § 1(a), 108 Stat. 745); cf. 49 U.S.C. § 1305(a) ("[N]o State . . . shall enact or enforce any law, rule, regulation, standard, or

to[,] airline rates, routes, or services" are preempted. Morales, 504 U.S. at 383-84 (quotation marks omitted). Claims based on state laws that "affect [airline fares] in too tenuous, remote, or peripheral a manner," however, are not preempted. Id. at 390 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)).

The Supreme Court has addressed ADA preemption in multiple frequent flyer cases. For instance, in American Airlines, Inc. v. Wolens, participants in a frequent flyer program sued for breach of contract and violation of Illinois' Consumer Fraud Act based on the airline's changes to program rules. 513 U.S. 219, 224-25 (1995). The Court held that such claims are preempted because the frequent flyer program awarded mileage credits that could be redeemed for tickets and upgrades, and thus legal claims seeking relief due to changes in such a program have a "connection with" the airline's rates and services. Id. at 226-27. In Northwest, Inc. v. Ginsberg, participants in a frequent flyer program sued for, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing after an airline terminated their accounts. 572 U.S. 273, 277-78 (2014). The Court, relying on Wolens, held that these claims are preempted because they relate to the airline's rates and services. Id. at 284-85. The Court rejected the contention that termination of a frequent flyer account was unrelated to price because "this argument ignores [why customers] seek[] reinstatement of [their] membership, i.e, to obtain reduced rates and enhanced services." Id. at 285.

---

other provision having the force and effect of law relating to rates, routes, or services of any carrier.").

6

With these principles in mind, the Court examines whether the ADA preempts Chalom's claims.

B

1

The Court begins with Chalom's noncontractual common-law claims. Chalom asserts claims for breaches of the duties of loyalty, candor, and good faith, ECF No. 1 at 13-14, unjust enrichment, ECF No. 1 at 15 (alleging "[United] . . . received a benefit without providing service of any real value"), and quantum meruit, ECF No. 1 at 16 (alleging Chalom paid United for travel and "was to receive points per agreement," United "accepted said funds," and Chalom "expected to receive the agreed upon points").

These common-law claims are preempted. "[S]tate common-law rules fall comfortably within the language of the ADA pre-emption provision" because common-law rules are "provisions" having "the force and effect of law." Ginsberg, 572 U.S. at 281-82 (citing Brown v. United Airlines, Inc., 720 F.3d 60, 68 (1st Cir. 2013)).[6] Chalom's claims are based on the termination of his frequent flyer account—a privilege

---

[6] Chalom argues that Ginsberg only applies to states that preclude a party from contracting around the implied covenant of good faith and fair dealing, such as Minnesota, and New Jersey is not one of those states. Although Ginsberg states that claims for breach of an implied covenant of good faith and fair dealing are preempted in at least states that do not allow parties to contract around the covenant, see 572 U.S. at 286-87 ("Whatever may be the case under the law of other jurisdictions, it seems clear that under Minnesota law, which is controlling here, the implied covenant must be regarded as a state-imposed obligation."), it did not hold the inverse that those claims are not preempted in states like New Jersey that do allow parties to contract around the covenant, Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 586 (N.J. 1997) (barring parties from disclaiming the covenant of good faith and fair dealing).

7

used to reduce the price of air travel—and thus relate to "price, routes, or service." See id. at 277, 280; 49 U.S.C. § 41713(b). Although Chalom asserts that his claims are "too tenuous, remote, or peripheral" to the "price" of flights, he acknowledges that the MP Program rewards "frequent flying" and gives travelers privileges when purchasing flights such as "no change fees." ECF No. 45 at 6. In addition, MP miles are redeemable for "award tickets," and thus the MP program directly affects the "price" members pay for air travel with United. ECF No. 43 at 78. Chalom's claims assert that the airline took "valuable . . . benefits," Ginsberg, 572 U.S. at 284, from him that impact the rates he would pay on later flights, see, e.g., ECF No. 1 at 13 (alleging that United was "earning profits at the expense of Plaintiff, thus depriving Plaintiff of such points that he . . . would have received"). Thus, these noncontractual claims are "related to" airlines' prices and services and are therefore preempted by the ADA. See 49 U.S.C. § 41713(b); see also Ginsberg, 572 U.S. at 281; Martin v. DHL Express USA, Inc., No. 3:21-cv-13363, 2022 WL 214047, *5 (D.N.J. Jan. 20, 2022) ("[S]tate common law claims of fraud and unjust enrichment are barred by the 'broad pre-emptive purpose' of the ADA." (quoting Ginsberg, 572 U.S. at 280)).

2

Chalom also alleges that United violated the CFA.[7] ECF No. 1 at 17. The CFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false

---

[7] Chalom's complaint cites "N.J.S.A. 26:8-2," but the CFA is contained in Chapter 56. He mentions state consumer fraud laws in his brief buts does not cite the CFA. The Court construes his claim as one under the CFA.

promise [or] misrepresentation" in the sale or advertisement of any merchandise. N.J.S.A. 56:8-2. Chalom asserts that the termination of his MP account was a "deceptive trade practice" under state law. ECF No. 1 at 17.

Applying Wolens, the Court holds that Chalom's CFA claim is preempted. The Wolens plaintiffs argued that modifying American Airlines' frequent flyer program, which allegedly "devalued credits . . . already earned," was a deceptive practice under Illinois' Consumer Fraud Act. 513 U.S. at 224-25, 227. The Supreme Court held that the claim was preempted because the state law "serve[d] as a means to guide and police the marketing practices of the airlines." 513 U.S. at 228. Like the Wolens plaintiffs, Chalom is attempting to use the CFA to regulate United's practices concerning its frequent flyer program. Thus, under Wolens, his CFA claim is preempted. See also Lagen v. United Cont'l Holdings, Inc., 774 F.3d 1124, 1128 (7th Cir. 2014) (holding claims based on allegedly false advertisement for United's MP Program are preempted because the ADA "preempts any claim based on violations of state consumer protection law").

Chalom's efforts to distinguish Wolens fail. First, Chalom argues that Wolens only applies to situations where an airline changes the frequent flyer rules for all passengers, rather than for just one passenger. ECF No. 45 at 18. Importantly, however, Wolens contained no such limitation: the Supreme Court analyzed whether the plaintiffs' invocation of Illinois' Consumer Fraud Act had the effect of "guid[ing] and polic[ing]" airline practices, not whether the challenged practice applied to all customers. See Wolens, 513 U.S. at 228. Moreover, there is no evidence that United has applied its rules differently to Chalom as compared to other MP members. United terminated Chalom's

9

MP account under the MP Rules, which apply to all travelers who "enroll[] or participate[] in the [MP] Program." ECF No. 43 at 68.

Second, Chalom argues that in Ginsberg, the Supreme Court indicated Wolens would not apply to situations where the traveler either earned miles from an activity other than taking flights or redeemed miles for non-travel benefits, and that because he earned MP miles based on a prior incident of lost baggage, Wolens does not control here. ECF No. 45 at 18. He points to language in Ginsberg that contemplated whether Wolens was inapplicable because a hypothetical traveler could "assert that he earned his miles from an[] activity other than taking flights." See Ginsberg, 572 U.S. at 285. Chalom reads too much into this statement. The Ginsberg Court did not need to determine whether Wolens would be applicable in such a case, since the plaintiffs there did not argue they earned miles from non-travel. Id. Moreover, Chalom has not pointed to any way in which his MP miles could be used in a manner unrelated to United flights. Cf. id. (noting argument that modern frequent flyer programs include miles that can be "spent without consuming airline services"). Because the holding in Ginsberg was not limited to situations where miles were earned solely through travel, Chalom's effort to limit Ginsburg fails.

For these reasons, Chalom's CFA claim is preempted.

3

Chalom also asserts a breach of contract claim, alleging that United "agreed to provide frequent flyer mileage points" to him but "breached that agreement by unceremoniously taking [his] points" and refusing to repay him. ECF No. 1 at 15, 6.

Whether a breach of contract claim is preempted depends on whether the obligation allegedly breached is one that the airline voluntarily assumed. In Wolens, the Supreme Court noted that the ADA's preemption clause does not "shelter airlines from suits . . . seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings" rather than state-imposed obligations. 513 U.S. at 228. The Court reasoned that "privately ordered obligations"—the terms of the parties' contracts—are not a "State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force or effect of law.'" Id. at 228-29 (citation omitted). Thus, breach of contract claims based on the "parties' [self-imposed] bargain, with no enlargement or enhancement based on state laws or policies external to the agreement," are not preempted. Id. at 233.

The Court will assume that United imposed upon itself certain obligations under the MP Program and that Chalom's breach of contract claim is therefore not preempted. To examine this claim, the Court asked Chalom to identify the exact contractual obligation United breached. In response, Chalom quoted language from the MP Rules' limitation of liability clause, stated that his breach of contract claim is based upon a violation of the MP Rules, and argued that United denied him benefits without justification.[8] ECF No. 56.

---

[8] The limitation of liability clause provides the remedy for improper denial of benefits. ECF No. 43 at 69. Thus, if there is a proper denial of benefits, the clause does not apply.
  Chalom cited other MP Rules, but none creates an obligation for United with respect to confiscation of miles. First, MP Rule 16 provides that members can accrue miles, but it does not address when United may confiscate them. ECF No. 43 at 74

11

Reading the arguments and record in a light most favorable to Chalom, his breach of contract claim seems to be predicated on a disagreement about whether United had a basis to terminate his account and cancel his accrued mileage. See, e.g., ECF No. 1 at 11 ("Plaintiff's activity caused Defendant's computer to unreasonably believe that Plaintiff's bookings were perhaps unsuitable" and thus "Defendant unceremoniously cancelled Plaintiff's account[.]").

United informed Chalom that it terminated his membership because his duplicative bookings constituted a violation of the Contract of Carriage. ECF No. 43 at 133; Bany Dep. 40:19-25, ECF No. 42-2 ("[C]ontract of [C]arriage abuse"); see ECF No. 43 at 93 (Contract of Carriage Rule 5(H), prohibiting "reservations made for the same passengers on flights traveling on or about the same date between one or more of the same or nearby origin or destination cities" and "reservations with connections that depart before the arrival on the inbound flight"). United's representative testified that

---

("Miles will be accrued in a Member's account only when the Member avails themselves of a means of accrual recognized under the Program."). Second, MP Rule 27 provides that "[m]ileage accrued in a Member's account shall be maintained in the account until it is redeemed for an award or until it expires, whichever occurs first," ECF No. 43 at 77, but it too does not address the circumstances under which United may confiscate that mileage, nor does it bar United from doing so. To read it as barring United from confiscating miles would render MP Rule 2 a nullity as it allows United to terminate accounts and "remov[e] or cancel[] . . . any and all accrued mileage," ECF No. 43 at 70.

Chalom separately argued that the MP Rules do not allow United to "confiscate miles and wrongfully annul tickets that rightfully belonged" to Chalom's family members, ECF No. 56 at 3, but this argument is irrelevant. As explained herein, United had the right to terminate MP members' accounts when MP members "abuse" or "fail[] to follow" United's rules. ECF No. 43 at 69 (MP Rule 2). That right does not depend on whether the miles that accrued in an account came from travel by individuals other than the account holder.

because of Chalom's bookings, "there were 14 seats held out of inventory, unable to be sold by our airline . . . [and] there was no way one person could have traveled on all of these seats taken out of service." Bany Dep. 96:13-19, ECF No. 42-2. Chalom acknowledged he made such reservations. For example, when asked about flight segments he booked that would be impossible for one person to take—such as departing San Francisco for Las Vegas an hour before his flight from Newark to Los Angeles arrived—Chalom responded that he "want[ed] to keep [his] options open" and cited the different planes' accommodations as one of his considerations. See Chalom Dep. 113:12-114:22, ECF No. 42-2 ("I know it sounds confusing because you're bypassing geographically but some of those bigger planes have roomier, if you will, cabins so it perhaps makes for a more comfortable flight . . . so wanting to keep my options opened I had looked into each of those possibilities but the intent was to travel only to [Las Vegas] as a final destination not to [San Francisco] and not to [Los Angeles] . . . they were just different possibilities and I eventually did travel Newark to [Las Vegas] and [Las Vegas] back to Newark and I ended up traveling the nonstop flights forgoing the roomier cabins and the roomier planes for the brevity of time to get there quicker . . . ."); see also ECF No. 43 at 64 (listing seven overlapping bookings for flights from Denver to Spokane on the same day as seven overlapping bookings for flights from Newark to Denver). Regardless of his explanation, Chalom admitted to reserving seats on concurrent flights for the convenience of later cancelling the reservations for planes he did not prefer. Thus, Chalom used his MP account to make "reservations . . . for the same passengers on flights traveling on or about the same date between one or more of the same or nearby

origin or destination cities" and "reservations with connections that depart before the arrival on the inbound flight."  ECF No. 43 at 93.  This is a violation of the Contract of Carriage, and no reasonable juror would find that Chalom's conduct was not an "abuse" under MP Rule 2 that justified terminating his account.

In sum, even if Chalom's breach of contract claim is not preempted by the ADA, he has not shown that United breached any contractual obligations to him.

### III

For the foregoing reasons, United's motion will be granted.

/s/ Patty Shwartz

United States Circuit Judge for the Third Circuit, sitting by designation